**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 (SUBCHAPTER V) |
| MICHAEL JERMAINE DICKEY, and CAJGIE MCGAHA DICKEY, | CASE NO.  21-51575-SMS |
| DEBTORS. | |

**PLAN OF REORGANIZATION**

Dated this  6  day of   April        , 2021

Filed by:

**MICHAEL JERMAINE DICKEY**
**CAJGIE MCGAHA DICKEY**

Attorney for Debtors
William A. Rountree
Benjamin Keck
Elizabeth Childers
Rountree, Leitman & Klein, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
wrountree@rlklawfirm.com
bkeck@rlklawfirm.com
echilders@rlklawfirm.com
(404) 584-1238

Doc ID: 6885d34e00e05f70799208350739a6965a8708376

COMES NOW Michael Jermaine Dickey and Cajgie Mcgaha Dickey, Debtors and Debtors in possession in the above-captioned case ( the "Debtors"), and, pursuant to sections 1123, 1189, and 1190 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), proposes this Plan of Reorganization (the "Plan") for the resolution of the Claims against Debtors. Debtors is the proponent of this Plan as required under section 1191 of the Bankruptcy Code.

## Article 1
## Contents of the Plan; Required Disclosures

1.1    *Subchapter V Plan of Reorganization*. This Plan is filed under Subchapter V of Chapter 11 of the Bankruptcy Code.

1.2    *History of the Debtors' Business Operations and Ability to Make Payments Under this Plan*.

The Debtors owned and operated two Uncle Maddio's Pizza franchise locations through their entities, CMR Concepts, LLC and CMR Concepts II, LLC. The global pandemic decimated the restaurant industry in 2020, and the restaurants' revenue decreased so severely that the Debtors were forced to close them both. CMR Concepts, LLC and CMR Concepts II, LLC both filed Chapter 7 bankruptcy cases. The Debtors' personal debts related to the businesses necessitated the filing of the instant Subchapter V case.

Mrs. Dickey, in addition to being in the restaurant business, also works full time as the Director of Human Resources for Cox Automotive. Mr. and Mrs. Dickey also own and actively manage a rental property with paying tenants. The Debtors anticipate that Mrs. Dickey's wages as well as the rental income will remain the same for the life of the Plan, allowing them to make the required payments under the Plan.

Mr. Dickey is also actively consulting in the restaurant industry, specifically with other Uncle Maddio's franchise owners.

1.3    *Liquidation Analysis*.

Holders of claims would not receive any greater return in a liquidation of Debtors' assets. Moreover, in a liquidation, the chapter 7 trustee or would incur costs associated with liquidation, such as broker's fees. The details of a hypothetical liquidation are in the liquidation analysis attached as **Exhibit A**. Assets disposed of by "liquidation" or "fire" sale generally generate significantly less proceeds than assets that are marketed and sold as a going concern. Additionally, a Chapter 7 trustee would incur trustee's fees pursuant to § 326(a) or § 330 of the Bankruptcy Code.[1]

---

[1] 11 USC § 326(a) states that a Chapter 7 trustee would incur trustee's fees equal to 25% of the first $5,000 of Liquidation Value of Assets; 10% of amount in excess of $5,000 but not in excess of $50,000 of Liquidation Value of Assets; 5% of any amount in excess of $50,000 but not in excess of $1,000,000; 3%

Doc ID: 888fd94c00e05f79790268257398a6958837d876

The proposed Plan contemplates that unsecured creditors will receive $85,088.43, the same amount that they would receive in a liquidation. The Debtor's real property is subject to a FIFA recorded by Ameris Bank and therefore unsecured creditors would not receive a distribution from the liquidation of real property. The personal property that is nonexempt and could be liquidated for unsecured creditors includes $9,661.62 in a checking account and $75,426.81 in a whole life insurance policy.

1.4    *Alternative Confirmation Standards Under Section 1191(a) and (b).* Debtors seek to confirm this Plan by obtaining the consent of all Classes provided for in this Plan by a majority in number and two-thirds in amount of Allowed Claims actually voting. If Debtors succeed in obtaining the consent of all Classes, the provisions of the Plan referencing and operating under section 1191(a) of the Bankruptcy Code will apply. If Debtors are unable to obtain the consent of all Classes, Debtors will request the Court to confirm the Plan under 1191(b). In this case, the provisions of the Plan referencing and operating under section 1191(b) of the Bankruptcy Code will apply.

1.5    *Property and Claims.* This Plan deals with all property of Debtors and provides for treatment of all Claims against Debtors and their property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan.  Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1    *Definitions.* The following terms, when used in this Plan, shall have the following meaning:

2.1.1    "*Administrative Expense Claim*" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2    "*Allowed Claim*" shall mean a Claim or any portion thereof that is enforceable against Debtors or enforceable against the property of Debtors under sections 502 or 503 of the Bankruptcy Code.

---

of any amount in excess of $1,000,000 of the Liquidation Value of Asset, and commissions for auctioneers for personal property generally is equivalent to ten (10%) percent of the gross sales price and commissions for real property brokers is generally six percent (6%) of the gross sales price.  In addition, the attorney for the Chapter 7 trustee would incur attorney's fees as would the current Chapter 11 attorneys.

11 USC § 330 provides for reasonable compensation for actual, necessary service rendered by the trustee and reimbursement for actual, necessary expenses. The Subchapter V trustee's hourly rate is $350.00.

Doc ID: 888fd94c00e0b5f3079a206a503239be095a37e576

2.1.3    "*Allowed Secured Claim*" shall mean the amount of the allowed Claim held by parties secured by property of Debtors which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4    "*Allowed Unsecured Claim*" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5    "*Assets*" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of Debtors (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter.

2.1.6    "*Avoidance Action*" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7    "*Ballot*" means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8    "*Bankruptcy Case*" means the chapter 11 case initiated by Debtors' filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Subchapter V of Chapter 11 of the Bankruptcy Code.

2.1.9    "*Bankruptcy Code*" means title 11 of the United States Code.

2.1.10    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11    "*Bankruptcy Rules*" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12    "*Business Day*" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13    "*Cash*" means legal tender of the United States of America and equivalents thereof.

2.1.14    "*Causes of Action*" means all Avoidance Actions and any and all of Debtors' actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

4

2.1.15  "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

2.1.16  "*Claim*" means a claim against Debtors whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17  "*Classes*" means a category of Claims described in this Plan.

2.1.18  "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19  "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1191 of the Bankruptcy Code, as such hearing may be continued.

2.1.20  "*Confirmation Order*" means the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtors.

2.1.21  "*Debtors*" shall mean Michael Jermaine Dickey and Cajgie Mcgaha Dickey, the Debtors in this Bankruptcy Case.

2.1.22  "*Disallowed Claim*" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtors' Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtors' Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.23  "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.24  "*Distribution*" means any distribution by Debtors or reorganized Debtors to a Holder of an Allowed Claim.

2.1.25  "*District Court*" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.26  "*Effective Date*" means the First Business Day that is not less than 14 days after entry of a Confirmation Order.

2.1.27  "*Estate*" means, with regard to Debtors, the estate that was created by the commencement by Debtors of the Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges

5

of such Debtors and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtors or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise. In the event that this Plan is confirmed by the Bankruptcy Court under section 1191(b) of the Bankruptcy Code, such definition shall also include (1) all of the property defined by section 541 of the Bankruptcy Code and (2) any earning from services performed by the Debtors, both that Debtors acquires after the commencement of the Bankruptcy Case but before the Bankruptcy Case is closed, dismissed, or converted to a case under Chapter 7, 12, or 13, whichever occurs first.

2.1.28 "*Executory Contract or Unexpired Lease*" means all executory contracts and unexpired leases to which Debtors is a party.

2.1.29 "*Final Distribution*" means the Distribution by Debtors or reorganized Debtors that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.30 "*Final Distribution Date*" means the Distribution Date on which the Final Distribution is made.

2.1.31 "*Final Order*" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.32 "*Holder*" means a holder of a Claim or Interest, as applicable.

2.1.33 "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.34 "*Initial Distribution Date*" means the Effective Date.

2.1.35 "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.36 "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.37 "*Petition Date*" means February 25, 2021.

2.1.38 "*Plan*" means this plan of reorganization as same may hereafter be corrected, amended, supplemented, restated, or modified.

Doc ID: 6885fd34e90e105fc797922685073384e965837876

2.1.39  "*Priority Claim*" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.40  "*Priority Tax Claim*" means a Claim against Debtors that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.41  "*Professional Compensation*" *means* (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by Debtors, or the Subchapter V Trustee, and (ii) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.42  "*Record Date*" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan.  If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.43  "*Record Holder*" means the Holder of a Claim as of the Record Date.

2.1.44  "*Released Parties*" means Debtors.

2.1.45  "*Retained Action*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtors or Debtors' Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtors, (iii) claims and Causes of Action relating to strict enforcement of Debtors' intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtors' business, including without limitation, claim overpayments and tax refunds, and (v) all Causes of Action that are Avoidance Actions.

2.1.46  "*Schedules*" means the Schedules of Assets and Liabilities Debtors filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.47  "*Secured Claim*" means a Claim against Debtors to the extent secured by a Lien on any property of Debtors on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.48  "*Subchapter V Trustee*" means Tamara M. Ogier, or any successor to Tamara M. Ogier, appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in this Bankruptcy Case.

Doc ID: 888fd94e00e05fd79920e8507339e09548376676

2.1.49 "*Subordinated Claim*" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.50 "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.51"*Unsecured Claim*" means any Claim against Debtors that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2     *Time*.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3     *Events of Default*.     Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtors in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtors at the addresses of record for Debtors as reflected on the docket for this Bankruptcy Case, unless Debtors have provided the Holder with a written notice of a change of address.  Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtors have fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtors and Debtors' counsel of the Default Notice (or the following business day if the 15th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).  The Holder must send such Default Notice to Debtors via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to William A. Rountree (Rountree Leitman & Klein, LLC) at the address reflected in the then current directory of the State of Bar of Georgia.  Debtors shall have fifteen (15) days or thirty (30) days (as applicable) from Debtors' and Debtors' counsel's receipt of the Default Notice to cure such default.  Receipt by Debtors' Attorney shall not be deemed receipt by Debtors of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example a default under Class 1 shall not constitute a default under Class 2).

2.4     *Notices*.   All notices under the Plan shall be in writing.   Unless otherwise specifically provided here in, all notices shall be sent to Debtors via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtors in this Case, unless Debtors have provided such Holder with written notice of change of address for Debtors, with a copy via email or fax and certified mail to the Debtors' attorney, William A. Rountree, at the address reflected in the then current directory of the State Bar of Georgia.  Receipt of notice by the Debtors' attorney shall not be deemed receipt by Debtors of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder,

8

(b) at the address set forth in any written notices of address change delivered to Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records.  Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

**Article 3**
**Classification of Claims and Interests**

3.1     Summary.  The categories of Claims and Interests set forth below classify all Claims against Debtors for all purposes of this Plan.  A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2     Classes:

    3.2.1    Class 1 shall consist of the secured claim of Ameris Bank (mortgage).

    3.2.2    Class 2 shall consist of the secured claim of WFS Bank.

    3.2.3    Class 3 shall consist of the secured claim of Mr. Cooper.

    3.2.4    Class 4 shall consist of the secured claim of Select Portfolio Servicing.

    3.2.5    Class 5 shall consist of the secured claim of Suntrust Bank Now Truist Bank.

    3.2.6    Class 6 shall consist of the secured claim of Wells Fargo Bank, N.A.

    3.2.7    Class 7 shall consist of the secured claim of Ameris Bank (judgment).

    3.2.8    Class 8 shall consist of General Unsecured Claims.

**Article 4**
**Treatment of Claims and Interests**

The Classes, the treatment of each Class, and the voting rights of each Class are set forth below.

Debtors reserve the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution or amount creditor would receive over the life of the

Doc ID: 6885fd94e00e105f7d5799208350739b4e9b5a870576

Plan as designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

**4.1 Class 1: Secured claim of Ameris Bank (mortgage):**

Class 1 shall consist of the Secured Claim of Ameris Bank (mortgage).

Ameris Bank ("Ameris") holds a secured claim in the estimated amount of $335,776.24. To secure its claim, Ameris asserts a first priority lien upon and security interest in Debtors' principal residence, commonly known as 415 Gartrell Street #20, Atlanta, Georgia 30312, (the "Residence").

Debtors shall pay the Class 1 Claim in accordance with the applicable underlying agreement and non-bankruptcy law.

The lien held by Ameris on the Residence shall continue in full force and effect until such time as the lien is paid in full or the property is sold.

Class 1 is Unimpaired and is deemed to accept the Plan.

**4.2 Class 2: Secured Claim of WFS Bank:**

Class 2 shall consist of the Secured Claim of WFS Bank.

WFS Bank ("WFS") holds a secured claim in the estimated amount of $97,261.09. To secure its claim, WFS asserts a second priority lien upon and security interest in the Residence.

Debtors shall pay the Class 2 Claim in accordance with the applicable underlying agreement and non-bankruptcy law.

The lien held by WFS on the Residence shall continue in full force and effect until such time as the lien is paid in full or the property is sold.

Class 2 is Unimpaired and is deemed to accept the Plan.

**4.3 Class 3: The Secured Claim of Mr. Cooper**:

Class 3 shall consist of the Secured Claim of Mr. Cooper.

Mr. Cooper holds a secured claim in the estimated amount of $83,576.77. To secure its claim, Mr. Cooper asserts a first priority lien upon and security interest in Debtors' rental property, commonly known as 1998 Pine Hill Circle, Kennesaw, Georgia, 30144 (the "Rental Property").

Debtors shall pay the Class 3 Claim in accordance with the applicable underlying agreement and non-bankruptcy law.

Doc ID: 888fd94c00e05f670799228867239fe0956837b576

The lien held by Mr. Cooper on the Rental Property shall continue in full force and effect until such time as the lien is paid in full or the property is sold.

Class 3 is Unimpaired and is deemed to accept the Plan

**4.4 Class 4: The Secured claim of Select Portfolio Servicing:**

Class 4 shall consist of the Secured Claim of Select Portfolio Servicing ("SPS").

SPS holds a secured claim in the estimated amount of $21,937.36. To secure its claim, SPS asserts a second priority lien upon and security interest in the Rental Property.

Debtors shall pay the Class 2 Claim in accordance with the applicable underlying agreement and non-bankruptcy law.

The lien held by SPS on the Rental Property shall continue in full force and effect until such time as the lien is paid in full or the property is sold.

Class 4 is Unimpaired and is deemed to accept the Plan.

**4.5 Class 5: The Secured claim of Suntrust Bank Now Truist Bank:**

Class 5 shall consist of the Secured Claim of Suntrust Bank Now Truist Bank.

Suntrust Bank Now Truist Bank ("Suntrust") asserts a secured claim in the amount of $28,523.21 pursuant to Proof of Claim No. 1. To secure its claim, Suntrust asserts a lien upon and security interest in Debtors' 2016 Land Rover Range Rover Sport (the "Range Rover").

Debtors shall pay the Class 5 Claim in accordance with the applicable underlying agreement and non-bankruptcy law.

The lien held by Suntrust on the Range Rover shall continue in full force and effect until such time as the Suntrust claim is paid in full, at which time the lien will terminate and be released by Suntrust.

Class 5 is Unimpaired and is deemed to accept the Plan.

**4.6 Class 6: The Secured claim of Wells Fargo:**

Class 6 shall consist of the Secured Claim of Wells Fargo.

Wells Fargo holds a secured claim in the estimated amount of $16,000.00. To secure its claim, Wells Fargo asserts a lien upon and security interest in Debtors' 2013 Tesla Model S (the "Tesla").

Doc ID: 6885d94e00e405fd7e7992f68257323ba695a875876

Debtors shall pay the Class 6 Claim in accordance with the applicable underlying agreement and non-bankruptcy law.

The lien held by Wells Fargo on the Tesla shall continue in full force and effect until such time as the Wells Fargo claim is paid in full, at which time the lien will terminate and be released by Wells Fargo.

Class 6 is Unimpaired and is deemed to accept the Plan.

## 4.7 Class 7: The secured claim of Ameris Bank (judgment)

Class 7 shall consist of the Secured Claim of Ameris Bank (judgment).

Ameris Bank ("Ameris") asserts a secured claim in the amount of $295,347.95 pursuant to Proof of Claim No. 2. by virtue of a judgment lien (the "Ameris Judgment Claim"). Ameris Bank recorded its Writ of Fieri Facis in the Superior Court of Cobb County, Georgia on September 17, 2020 at Lien Book 137 Page 5543 and in the Superior Court of Fulton County, Georgia on August 25, 2020 at Lien Book 4906 Page 24. The judgment lien attaches to real property located in the county which the FIFA is recorded and to personal property that cannot be defined as a chose in action, as well as personal property that had been levied via a garnishment. The liquidation analysis attached hereto as **Exhibit A** identifies the nonexempt property to which the FIFA attaches in this case (the "Ameris Collateral").

The judicial lien of Ameris impairs exemptions to which the Debtors are entitled under 11 U.S.C. § 522(b). Under 11 U.S.C. §506(a), Ameris' Claim is bifurcated into secured and unsecured claims based on the value of the Ameris Collateral. Ameris' Claim shall be treated as a $71,501.48 secured claim (the "Ameris Secured Claim"). The remaining balance of the Ameris Claim shall be a treated as a Class 8 unsecured claim.

Beginning on the 1st day of the month following the Effective Date, Debtor shall pay the Ameris Secured Claim of $71,501.48 by making monthly payments over 5 years at 4.25% interest. Debtor estimates the monthly payment to Ameris will be $1,325.00 for 60 consecutive months. Ameris shall retain its lien on the Ameris Collateral and said lien shall be valid and fully enforceable to the same extent, validity, and priority as existed on the Petition Date. Upon receipt of payment in full of the Ameris Secured Claim, Ameris shall release its lien on the Ameris Collateral and record a cancellation of its FIFA in the Cobb County and Fulton County, Georgia records. There shall be no pre-payment penalty.

The Claim of Ameris is Impaired by the Plan and Ameris is entitled to vote to accept or reject the plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

**4.8 Class 8:  General Unsecured Claims:**

Class 8 shall consist of General Unsecured Claims including any potential deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f).

Debtors shall pay the Class 8 General Unsecured Creditors an amount equal to their projected disposable income after payment of Classes 1-7, which is $1,419.00 per month.

The Debtors shall pay the Class 8 General Unsecured Creditors quarterly commencing on the 1st of the month immediately following the Effective Date and continuing on the 1st day of each third month through and including the 60th month following the Effective Date. General Unsecured Creditors will receive 20 disbursements of $4,257.00 for a total of $85,140.00. A copy of Debtors' monthly budget showing their projected disposable income is attached to this Plan as **Exhibit B**.

Debtors anticipate and project but do not warrant the following Holders of Class 8 Claims and the distributions under Class 8:

| Anticipated Holder | Account No. | Scheduled | POC Amount | Estimated for Distribution Purposes | Estimated Total Distribution | % Est Total Distribution | Quarterly Distribution Amount |
|---|---|---|---|---|---|---|---|
| Ameris Unsecured Claim | 2334 | $223,846.47 | $0.00 | $223,846.47 | $28,719.50 | 12.83% | $1,435.98 |
| American Express | 8008 | $9,300.00 | $0.00 | $9,300.00 | $1,193.19 | 12.83% | $59.66 |
| Apex | 2542 | $255.00 | $0.00 | $255.00 | $32.72 | 12.83% | $1.64 |
| Aramark | 7837 | $300.00 | $0.00 | $300.00 | $38.49 | 12.83% | $1.92 |
| Billboard S Link Media | 3972 | $1,500.00 | $0.00 | $1,500.00 | $192.45 | 12.83% | $9.62 |
| Cobb County Alarm | 1600 | $275.00 | $0.00 | $275.00 | $35.28 | 12.83% | $1.76 |
| Cobb EMC | 8001 | $1,255.31 | $0.00 | $1,255.31 | $161.06 | 12.83% | $8.05 |
| Coke | 4858 | $700.00 | $0.00 | $700.00 | $89.81 | 12.83% | $4.49 |
| Comcast | 4124 | $500.00 | $0.00 | $500.00 | $64.15 | 12.83% | $3.21 |
| Fireside (Gas) | 131 | $1,059.00 | $0.00 | $1,059.00 | $135.87 | 12.83% | $6.79 |
| Inland Properties | | $0.00 | $0.00 | $0.00 | $0.00 | 12.83% | $0.00 |
| Link Media | 3972 | $1,000.00 | $0.00 | $1,000.00 | $128.30 | 12.83% | $6.42 |
| Loud Security | 291 | $350.00 | $0.00 | $350.00 | $44.91 | 12.83% | $2.25 |
| MidFirst Bank | 0-100 | $319,481.53 | $0.00 | $319,481.53 | $40,989.48 | 12.83% | $2,049.47 |
| Mood Music | 3303 | $300.00 | $0.00 | $300.00 | $38.49 | 12.83% | $1.92 |
| NuCo2 | 4351 | $200.00 | $0.00 | $200.00 | $25.66 | 12.83% | $1.28 |
| NuCo2 | 4959 | $300.00 | $0.00 | $300.00 | $38.49 | 12.83% | $1.92 |
| RDS | 6888 | $605.00 | $0.00 | $605.00 | $77.62 | 12.83% | $3.88 |
| Scana | 5286 | $675.00 | $0.00 | $675.00 | $86.60 | 12.83% | $4.33 |

Doc ID: 888fd94e00e05f879a2682572a8e09518370576

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Spectrum Charter Communication | 629 | $550.00 | $0.00 | $550.00 | $70.57 | 12.83% | $3.53 |
| SS Maddios | | $49,000.00 | $0.00 | $49,000.00 | $6,286.70 | 12.83% | $314.34 |
| Sysco | 5736 | $12,000.00 | $0.00 | $12,000.00 | $1,539.60 | 12.83% | $76.98 |
| Sysco | 5733 | $14,000.00 | $0.00 | $14,000.00 | $1,796.20 | 12.83% | $89.81 |
| Terminix | 8509 | $200.00 | $0.00 | $200.00 | $25.66 | 12.83% | $1.28 |
| Wells Fargo Business Card | 8778 | $13,000.00 | $12,492.67 | $12,492.67 | $1,602.81 | 12.83% | $80.14 |
| Wells Fargo Business Credit Card | 827 | $11,500.00 | $13,365.46 | $13,365.46 | $1,714.79 | 12.83% | $85.74 |

Notwithstanding anything else in this document to the contrary, any claim listed above shall be reduced by any payment received by the creditor holding such claim from any third party or other obligor and Debtors' obligations hereunder shall be reduced accordingly.

The Claims of the Class 8 Creditors are Impaired by the Plan and the holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtors reserves the right to object to any and all claims.

### 4.11   **Sale Procedures**

After the Confirmation Date, Debtors are authorized to sell or refinance their assets, specifically including their real property, free and clear of liens, claims and encumbrances as set forth herein (the "Sale Procedures").   In the event the applicable assets are subject to secured claims, Debtors are authorized to sell or refinance such property free and clear of liens, claims and encumbrances on the following terms:

(i)    If selling or refinancing the entire property, Debtors may sell or refinance such property for any amount (a release amount) that is at least equal the outstanding amount of Allowed Secured Claims securing such property; and

(ii)   If selling or refinancing a portion of the property, such as a lot or portion of the acreage, Debtors may sell or refinance such property for any amount (a release amount) that is at least equal to the outstanding amount of Allowed Secured Claims securing such property.

Such amounts are referred to in the Plan as the "Release Amount."  The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid as follows: (i) first to cover any *ad valorem* property taxes associated with the particular asset, (ii) then secured claims in order of priority, to the extent of available proceeds, and (iii) then to fund Debtors's other

14

obligations as set forth in the Plan.  In the unlikely event that any Allowed Secured Claim is not satisfied and paid in full pursuant to the provision of the Sale Procedures set forth in Article 4.11 of the Plan, such unpaid amount shall be provided for and paid as General Unsecured Claim in Class 8.

The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the Sale Procedures herein.

## Article 5
## Subchapter V Trustee

5.1    *Subchapter V Trustee.*

The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

5.2    *Termination of the Subchapter V Trustee's Services*

The services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code. Debtors shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

*5.3 Compensation of the Subchapter V Trustee*

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3).
Debtors shall pay any unpaid allowed compensation owed to the Subchapter V Trustee in full on the day after the order on the Subchapter V Trustee's application for compensation becomes a Final Order, or upon such other terms as may be agreed upon by the Debtors and the Subchapter V Trustee.

## Article 6
## Treatment of Unclassified Claims

6.1    *Summary*.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtors are not classified for purposes of voting on or receiving Distributions under the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims, other than that of the Subchapter V Trustee addressed above, are instead treated separately in accordance with Article 6 of the Plan and in accordance with the requirements set forth in sections 1129(a)(9)(A) and 1191(e) of the Bankruptcy Code, as applicable.

6.2    *Rountree, Leitman & Klein, LLC*. With respect to potential Administrative Expense Claims, Debtors, pursuant to Court order, retained the law firm of Rountree Leitman & Klein, LLC (the "Firm") to serve as bankruptcy counsel.  As set forth in the employment application and

Doc ID: 688fd94c00e005f7d799268250729be9605837676

supporting documents, the Firm received a prepetition retainer in the amount of $26,738.00, including the filing fee. As of the date hereof, the fees and expenses incurred by the Firm have not exceeded the retainer.  Debtors shall pay any unpaid Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm. The Firm shall retain its security interest in the pre-petition retainer.

6.3      *Administrative Expense Claims.*  Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtors, (iv) if the Plan is confirmed under section 1191(b) of the Bankruptcy Code, pro-rata  over the period (a) starting on the first day of the month immediately following the month in which the order on the application by the holder of an Allowed Administrative Expenses Claim for compensation became a Final Order and (b) ending on the first day of the month in which the Final Distribution is due, or (v) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtors in the ordinary course of business after the Filing Date, or otherwise assumed by Debtors on the Effective Date pursuant to this Plan, including any tax obligations arising after the Effective Date, will be paid or performed by Debtors when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

6.4      *Proof of Claim for an Administrative Expense Claim.* Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtors of its business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Effective Date.  At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtors and the Subchapter V Trustee.  Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtors or the Estate.

6.5      *Professional Fees.* Other than the Subchapter V Trustee, any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within sixty (60) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

6.6      *Post-Confirmation Professional Fees.* Debtors may pay professional fees incurred after confirmation of the Plan without Court approval, other than the fees of the Subchapter V Trustee, which must be approved by the Court.

Doc ID: 6885fd94e0e0e05f07992068250793b4e985a370676

**Article 7**
**Means for the Implementation of the Plan**

7.1    *Parties Responsible for Implementation of the Plan.*  Upon confirmation, Debtors will be charged with administration of the Plan.  Debtors will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtors will file all post-confirmation reports required by the United States Trustee's office or by the Subchapter V Trustee.  Debtors will also file the necessary final reports and may apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process. Debtors shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtors.

7.2    *Sources of Cash for Distribution.*

7.2.1    The source of funds for the payments pursuant to the Plan is Mrs. Dickey's income from her employment.

7.2.2    A copy of Debtors' post Confirmation monthly budget is set forth as **Exhibit B** to this Plan.   Debtors' projections are based on Debtors' previous periods income. Debtors are able to reasonably project income and expenses based on such information.

7.2.3    Debtors may maintain bank accounts under the confirmed Plan in the ordinary course of business.   Debtors may also pay ordinary and necessary expenses of administration of the Plan in due course.

7.2.4    *Preservation of Causes of Action.*  In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtors will retain and may (but is not required to) enforce all Retained Actions.  After the Effective Date, Debtors, in its sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court.  Debtors (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtors (or any successors holding such rights of action).  The failure of Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtors of such claim, right of action, suit, proceeding or other Retained Action, and Debtors will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtors reserves all causes of actions for breach of any former or now existing agreement or otherwise.  Debtors specifically reserve any cause of action against any of Debtors' account Debtors related to underpayment or non-payment of any fees, or other monies or receivables due. The Plan shall not be deemed a waiver of any right of Debtors to collect any receivable or right to payment under any applicable laws.  Debtors expressly reserves the right to exercise any and all remedies available to Debtors regarding its accounts receivable or rights to payment at law or in

Doc ID: 888fd34c00e005f767992268570339e6908a370876

equity, at such time or times as Debtors from time to time may elect. This Plan is filed with a full reservation of rights.  Any failure by Debtors to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default.  Debtors hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtors may be entitled to applicable law.  No delay on the part of Debtors in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. This Plan is filed with a full reservation of rights.

7.2.5 *Effectuating Documents, Further Transactions*.  Debtors is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

7.2.6 *Exemption from Certain Transfer Taxes and Recording Fees*.  Pursuant to 11 U.S.C. § 1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtors to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtors' real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

7.2.7 *Further Authorization*.  Debtors shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

7.2.8 *Liabilities of Debtors*.  Debtors will not have any liabilities except those expressly stated or assumed under the Plan. Debtors will be responsible for all expenses incurred by Debtors in the ordinary course of business after the Petition Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of post-confirmation the expense claims.

## Article 8
## Distributions

8.1 *Disbursing Agent.*  Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtors.

Doc ID: 688fd94c80e05f07792086507359be09b5a870576

8.2    *Distributions of Cash*.  Any Distribution of Cash made by Debtors pursuant to this Plan shall, at Debtors' option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

8.3    *No Interest on Claims or Interests*.  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

8.4    *Delivery of Distributions*.  The Distribution to a Holder of an Allowed Claim shall be made by Debtors (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtors has not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtors are notified by such Holder in writing of such Holder's then-current address, at which time Debtors shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within six (6) months of return shall be irrevocably retained by Debtors and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtors and not claimed within six (6) months of return shall be irrevocably retained by Debtors notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtors to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtors shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim.  Accordingly, in the event of an Unsecured Distribution Refusal, Debtors shall be relieved of any obligation to make said payment or Distribution and Debtors is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtors to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.  In the event of a Secured or Priority Distribution Refusal, any obligation of Debtors to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtors that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtors on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtors' obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal

Doc ID: 888fd34c880405fc76799206825073391ae965a8370676

and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period"). Only in the event of such notice to Debtors shall Debtors' obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtors or the Debtors' property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Debtors shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtors shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

8.5    *Distributions to Holders as of the Record Date*. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. Debtors shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. Debtors shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

8.6    *Fractional Dollars*. Any other provision of this Plan notwithstanding, the Debtors shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtors' option the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

8.7    *Withholding Taxes*. Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

**Article 9**
**Procedures for Treating and Resolving Disputed Claims**

9.1    *Objections to Claims*. Debtors shall be entitled to object to Claims, provided, however, that Debtors shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan. The deadline to object to Claims is 60 days after the Effective Date.

9.2    *No Distributions Pending Allowance*. Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

Doc ID: 888fd94e00105fd76799208830723f1e695a8370876

9.3    *Resolution of Claims Objections*.    On and after the Effective Date, Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 10
## Provision for Assumption of Unexpired
## Leases and Executory Contracts

10.1    *Provisions Regarding Executory Contracts.*

Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date.  Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before thirty (30) days after the Confirmation Date.  Any claims which are not timely filed will be disallowed and discharged.

## Article 11
## Effect of Plan on Claims and Interests

11.1    *Vesting of Debtors' Assets*.    Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtors free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders, except as specifically provided in the Plan.  As of the earlier of the Effective Date and the entry of a Final Decree, Debtors may operate its business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

11.2    *Discharge of Debtors.*

11.2.1    Discharge if Plan Confirmed Under Section 1191(a).  Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtors, whether known or unknown, including any and all liabilities of Debtors, Liens on Debtors' assets, obligations of Debtors, rights against Debtors, and Interests in Debtors or its Estate that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

11.2.2    Discharge if Plan Confirmed Under Section 1191(b). If the Plan is confirmed under section 1191(b), as soon as practicable after completion by

Doc ID: 6885d94c00e005f3f079a20a280733be095a8370676

the Debtors of the payment of all projected disposable income and any other payments expressly provided for under this Plan due within five (5) years from the Effective Date, or as the Court may fix within the Confirmation Order, the Court shall grant Debtors a discharge of all debts.

11.3    *Setoffs*. Debtors may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtors may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtors of any such claim that Debtors may have against such Holder.

11.4    *Exculpation and Limitation of Liability*.  Under the Plan, Debtors' current and/or pre-Effective Date employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorney, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan.  Fees and expenses which Debtors owes to its Professionals and to the Subchapter V Trustee are excluded from this Exculpation.

11.5    *Injunction*.    Upon entry of a Confirmation Order in this case, except as provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) Debtors, or (2) against any property of Debtors. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.

11.6    *Effect of Confirmation*.

11.6.1    <u>Binding Effect</u>.  On the Confirmation Date, the provisions of this Plan shall be binding on Debtors, the Estate, all Holders of Claims against or Interests in Debtors, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtors, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

Doc ID: 888fd94e00e05f9b79a20885073384e905b870576

11.6.2 <u>Effect of Confirmation on Automatic Stay</u>.  Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

11.6.3 <u>Filing of Reports</u>.  Debtors shall file all reports required by the Bankruptcy Code, Bankruptcy Rules, the Subchapter V Trustee, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

11.6.4 <u>Post-Effective Date Retention of Professionals</u>.  Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtors may employ and pay professionals in their ordinary course of business.

**Article 12**
**Conditions Precedent**

12.1 *Conditions to the Effective Date.*  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 12.2 of this Plan.

12.1.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

12.1.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtors in its reasonable discretion.

12.1.3 Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

12.2 *Waiver of Conditions to Confirmation or Consummation*.  The conditions set forth in Article 12.1 of this Plan may be waived, in whole or in part, by Debtors without any notice to any other parties in interest or the Bankruptcy Court and without a hearing.  The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Debtors in its sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtors).  The failure of Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 13**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

13.1 *Retention of Jurisdiction*.  Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

Doc ID: 888fd94c80t05f37579206825073991e095183f5676

13.1.1       To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

13.1.2       To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

13.1.3       To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtors;

13.1.4       To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtors;

13.1.5       To hear and rule upon all applications for Professional Compensation, including the Subchapter V Trustee;

13.1.6       To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

13.1.7       To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

13.1.8       To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

13.1.9       To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

13.1.10      To determine any suit or proceeding brought by Debtors to recover property under any provisions of the Bankruptcy Code;

13.1.11      To hear and determine any tax disputes concerning Debtors and to determine and declare any tax effects under this Plan;

13.1.12      To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

Doc ID: 688fd94c00005c0579920b850735841e9b5e37b576

13.1.13    To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

13.1.14    To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtors sold any of its assets during the Bankruptcy Case; and

13.1.15    To enter a final decree;

13.1.16    To enter an order of discharge; and

13.1.17    To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

13.2    *Alternative Jurisdiction*.  In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter.  If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.  Notwithstanding anything to the contrary herein, Debtors shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtors) to which Debtors is a party in any state or local court having jurisdiction over such action.

13.3    *Final Decree*.  If the Plan is confirmed under 1191(a), the Bankruptcy Court may, upon application of Debtors, at any time after "substantial consummation" of the Plan as defined in section 1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtors shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtors has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.  If the Plan is confirmed under 1191(b), the Bankruptcy Court may, upon application of Debtors, at any time after Final Distribution, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest.

## Article 14
## Miscellaneous Provisions

14.1    *Modification of the Plan*.  Debtors shall be allowed to modify this Plan pursuant to section 1193 of the Bankruptcy Code to the extent applicable law permits.

Doc ID: 8885d94c000e05f3079226285073391e9951830676

14.2    *Pre-Confirmation Modifications.* Debtors may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

14.3    *Modification After Confirmation And Prior to Substantial Consummation.* Debtors may modify the Plan upon a showing that circumstances warrant such a modification and after a notice and hearing. If the Plan was confirmed under section 1191(a), any holder of a claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

14.4    *Modification After Substantial Consummation.* If the Plan has been confirmed under section 1191(b), Debtors may modify the Plan upon a showing the circumstances warrant such a modification and after a notice and hearing.

14.5    *Allocation of Plan Distributions Between Principal and Interest.* To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

14.6    *Applicable Law.* Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

14.7    *Preparation of Estate Returns and Resolution of Tax Claims.* Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

14.8    *Headings.* The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

14.9    *Revocation of Plan.* Debtors reserves the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

14.10   *No Admissions; Objection to Claims.* Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtors to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtors's rights to object to or reexamine such Claim in whole or in part.

Doc ID: 888fd94e00e005e7079920820769b4695a830576

14.11 *No Bar to Suits*. Except as otherwise provided in Article 11 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtors from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any document filed by Debtors in connection with this Bankruptcy Case or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtors retains and reserves the right to prosecute Retained Actions.

14.12 *Exhibits/Schedules*. All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

## Article 15
## Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or Holders of an Interest are represented, implied, or warranted. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation. The Debtors assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this **6** day of **April**, 2021.

By: _____

_____
Michael Jermaine Dickey
Cajgie Mcgaha Dickey
Debtors

Doc ID: 685fd94e00e05f7e79a26a250739a695a8305676

**ROUNTREE LEITMAN & KLEIN, LLC**

*/s/ Elizabeth Childers*
William A. Rountree, Ga. Bar No. 616503
Elizabeth Childers, Ga Bar No. 143546
Century Plaza I
2987 Clairmont Road, Suite 175
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
echilders@rlklawfirm.com
Attorneys for the Debtors in Possession

Doc ID: 6885d94c00e405f79926a8573394e965a8370876

## Exhibit "A"
## Liquidation Analysis

### Real Property Liquidation Analysis

| Property | Value | Secured Mortgages | Does the Ameris Bank FIFA attach by virtue of being recorded in the county where the property is located? | Exemption | Amount of Ameris Bank's claim that is secured by the collateral | Net Equity remaining for unsecured creditors |
|---|---|---|---|---|---|---|
| 415 Gartrell St. # 20, Atlanta , GA | $505,000.00 | $433,037.33 | Yes | $34,412.85 | $37,549.82 | $0.00 |
| 1998 Pine Hill Cr., Kennesaw, GA | $135,000.00 | $105,514.13 | Yes | $0.00 | $29,485.87 | $0.00 |
| TOTAL | | | | | $67,035.69 | $0.00 |

### Personal Property Liquidation Analysis

| Property | Scheduled Value | Secured Creditors | Does the Ameris Bank FIFA attach? | Exemption | Amount of Ameris Bank's claim that is secured by the collateral | Net Equity remaining for Unsecured Creditors |
|---|---|---|---|---|---|---|
| Renge Rover | $34,000.00 | $28,534.21 | Yes | $4,000.00 | $1,465.79 | $0.00 |
| Tesla | $19,000.00 | $16,000.00 | Yes | $3,000.00 | $0.00 | $0.00 |
| BMW | $4,000.00 | $0.00 | Yes | $3,000.00 | $1,000.00 | $0.00 |
| 4 Runner | $2,000.00 | $0.00 | Yes | $0.00 | $2,000.00 | $0.00 |
| Household Goods and Furnishings | $2,000.00 | $0.00 | Yes | $2,000.00 | $0.00 | $0.00 |
| Electronics | $2,000.00 | $0.00 | Yes | $2,000.00 | $0.00 | $0.00 |
| Firearms | $400.00 | $0.00 | Yes | $400.00 | $0.00 | $0.00 |
| Clothing | $500.00 | $0.00 | Yes | $500.00 | $0.00 | $0.00 |
| Jewelry | $1,000.00 | $0.00 | Yes | $1,000.00 | $0.00 | $0.00 |
| Ameriprise Checking Account | $9,661.62 | $0.00 | No | $0.00 | $0.00 | $9,661.62 |

Doc ID: 888f5d94c00e05f9079a20a85735b1e945a830676

| | | | | | | |
|---|---|---|---|---|---|---|
| Ally Checking Account | $7,324.51 | $0.00 | Yes (via garnishment) | $7,324.51 | $0.00 | $0.00 |
| Ally Savings Account | $1,000.00 | $0.00 | Yes (via garnishment) | $1,000.00 | $0.00 | $0.00 |
| Ownership of CMR I, LLC | $0.00 | $0.00 | No | $0.00 | $0.00 | $0.00 |
| Ownership of CMR II, LLC | $0.00 | $0.00 | No | $0.00 | $0.00 | $0.00 |
| Ownership of Ramse Enterprises | $0.00 | $0.00 | No | $0.00 | $0.00 | $0.00 |
| Michael Dickey 401(k) | $49,371.87 | $0.00 | No | $49,371.87 | $0.00 | $0.00 |
| Michael Dickey Roth IRA | $61,832.00 | $0.00 | No | $61,832.00 | $0.00 | $0.00 |
| Cajgie Dickey 401(k) | $330,099.00 | $0.00 | No | $330,099.00 | $0.00 | $0.00 |
| Cagie Dickey Roth IRA | $65,861.00 | $0.00 | No | $65,861.00 | $0.00 | $0.00 |
| Garnished Wages | $2,662.64 | $0.00 | Yes (via garnishment) | $2,662.64 | $0.00 | $0.00 |
| Whole Life Insurance Policy | $79,426.81 | $0.00 | No | $4,000.00 | $0.00 | $75,426.81 |
| **TOTAL** | | | | | **$4,465.79** | **$85,088.43** |

**Exhibit "B"**
**Debtors' Budget**

|  | Monthly |
|---|---|
| **Income (Debtors' net from Mrs. Dickey's salary plus net from Rental Property)** | **$8,910.00** |
| House payment (Class 1 and Class 2) | -$3,400.00 |
| HOA | -$175.00 |
| Electric, gas | -$200.00 |
| Water, sewer, garbage | -$20.00 |
| Phone, internet, cable | -$100.00 |
| Food, supplies | -$400.00 |
| Clothing, Laundry, Dry Cleaning | -$75.00 |
| Medical & Dental | -$50.00 |
| Transportation | -$175.00 |
| Life Insurance | -$50.00 |
| Car insurance | -$381.00 |
| Car payment 1 (Class 5) | -$583.00 |
| Car payment 2 (Class 6) | -$557.00 |
| Payment on Ameris Secured Claim (Class 7) | -$1,325.00 |
| **Disposable Income:** | **$1,419.00** |

Doc ID: 688fd94c00c05f7079a20a250739fae96bd8f6876